Case 4:18-cv-01359   Document 16   Filed on 02/11/19 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
February 11, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CASE NO. 4:18-CV-1359 |
| CIRCLE R & R, INC.; and JOHN FREEMAN, | § § § § | |
| *Defendants*. | § § | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff brings this suit alleging that Defendants violated the Federal Communications Act by unlawfully exhibiting a televised boxing match at their Houston-area establishment in May of 2015. Pursuant to 28 U.S.C. § 636(b)(1)(B), the case has been designated for preparation and submission of proposed findings of fact and recommendations for disposition [ECF No. 15]. Having considered the filings, the evidence, and the applicable law, the Court RECOMMENDS that Plaintiff's Motion for Final Default Judgment [ECF No. 12] be GRANTED and that Plaintiff be awarded $18,000.00 in damages and $1,000.00 in attorney's fees.

1

## I. Defendants' Default and Liability

### A. Proposed Findings of Fact

1. Plaintiff J&J Sports Productions, Inc. commenced this action on April 30, 2018. [ECF No. 1.]

2. Defendants Circle R & R, Inc. and John Freeman were personally served with summons and complaint on June 15, 2018, and Plaintiff filed proof of service on June 19, 2018. [ECF Nos. 6 and 7.]

3. Defendants have never made an appearance in this action. Defendant Freeman has not been on active duty in the military service of the United States during the pendency of this suit. [ECF No. 12-1, pages 66–70.]

4. Plaintiff requested entry of default against Defendants on August 3, 2018. [ECF No. 11.] The Clerk of Court obliged on August 24, 2018. [ECF No. 13.]

5. Plaintiff's complaint contains the following pertinent allegations:

   a. Plaintiff is a license company that had exclusive authorization to sub-license the telecast of the May 2, 2015 Floyd Mayweather, Jr.–Manny Pacquiao Championship Fight Program (the "Event") at closed-circuit locations throughout the state of Texas. [ECF No. 1 ¶ 6.] In addition to the headline fight, the Event included an undercard bout between Leo Santa Cruz and Jose Cayetano. [*Id.* ¶ 6 & n.1.]

b. Commercial establishments in Texas could exhibit the closed-circuit broadcast of the Event, but only if they obtained contractual authorization to do so from Plaintiff. In exchange for a fee, Plaintiff granted such authorization to numerous establishments throughout Texas. [*Id.* ¶¶ 7, 8.]

c. Defendant Circle R & R is a Texas corporation that owned and/or operated CJ's Packet Icehouse & Grill, a commercial establishment located in Deer Park, Texas. [*Id.* ¶ 2.] At the time of the Event, Defendant Freeman was an owner and manager of CJ's Packet Icehouse & Grill, had a right and ability to supervise the activities of the establishment, and had a direct financial interest in the activities of the establishment. [*Id.* ¶ 3.]

d. Defendants did not contract with Plaintiff or any of its agents to broadcast the Event. [ECF No. 1 ¶¶ 7–8, 10.] At no time were Defendants authorized to intercept, receive, or transmit communications of the Event in any form. [*Id.* ¶ 16.]

e. The broadcast of the Event originated via satellite and was electronically coded or scrambled. For the broadcast of the Event to be received and displayed clearly, the satellite signal had to be decoded with electronic decoding equipment. [*Id.* ¶ 9.] Establishments that contracted with Plaintiff were provided with means of receiving and decoding the signal. [*Id.* ¶ 11.]

f. On May 2, 2015, either by satellite transmission or through unauthorized receipt over a cable system, Defendants willfully intercepted or received the

3

interstate communication of the Event. In the alternative, Defendants assisted in the receipt of the interstate communication of the Event. Defendants then transmitted, divulged, and published that communication to patrons in their establishment, or assisted in doing so. [*Id.* ¶¶ 12, 13.]

      g.  By engaging in these actions, Defendants infringed upon Plaintiff's exclusive right to license exhibition of the Event. [*Id.* ¶¶ 12, 13.] Defendants committed these actions willfully and with the express purpose and intent of securing a commercial advantage and private financial gain. [*Id.* ¶ 13.]

### B. Analysis and Recommendation

The Federal Communications Act of 1934 (the "Act"), 47 U.S.C. § 151 *et seq.*, prohibits the unauthorized interception and broadcast of satellite transmissions. Specifically, 47 U.S.C. § 605(a) states, inter alia, that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The term "radio," as used in this provision, includes satellite transmissions. *Garden City Boxing Club, Inc. v. Gomez*, No. 1:05-cv-249, 2006 WL 1663358, at *2 n.1 (S.D. Tex. June 5, 2006) (Tagle, J.).

To establish a defendant's prima facie liability under § 605, a plaintiff must demonstrate that the defendant: (1) received, assisted in receiving, transmitted, or assisted in transmitting an interstate radio communication; and (2) broadcast, displayed, or divulged that communication to at least one other person without authorization. *Id.* at *2; *J&J Sports Prods., Inc. v. Allen*, No. 9:13-cv-105, 2014 WL 12567151, at *6 (E.D. Tex. June 27, 2014), *adopted*, 2014 WL 12573953 (E.D. Tex. July 17, 2014). "Any person aggrieved by any violation of [47 U.S.C. § 605(a)] . . . may bring a civil action in a United States district court . . . ." 47 U.S.C. § 605(e)(3)(A). The term "any person aggrieved" "include[s] any person with proprietary rights in the intercepted communication by . . . radio, including wholesale or retail distributors of satellite cable programming . . . ." *Id.* § 605(d)(6).

"It is universally understood that a default operates as a deemed admission of liability." *In re Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992); *see also Administrative Committee of the American Basketball Assoc. v. Jones*, 2016 WL 8905038, at *4 & n.47 (W.D. Tex. Sept. 7, 2016) ("A defaulting party is deemed to have admitted all well-pleaded allegations of the complaint."). By failing to appear in this action, Defendants have earned an entry of default and admitted to the well-pleaded factual

5

allegations in Plaintiff's complaint. Taking those allegations as true, the Court concludes that Plaintiff possessed proprietary rights in the radio communications of the Event that Defendants intercepted and that Plaintiff is therefore a "person aggrieved" entitled to bring this civil action. The allegations in the complaint also establish that Defendants violated § 605 of the Act. Specifically, the allegations readily demonstrate that Defendants: (1) received an interstate radio communication of the Event; and (2) broadcast, displayed, and divulged that communication to one or more patrons at its establishment without authorization.[1]

Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment be GRANTED as to Defendants' liability under 47 U.S.C. § 605.[2]

---

[1] "Establishing individual liability under Section 605(a) requires a showing of either 'contributory infringement,' which arises when the individual 'authorize[d] the violations,' or 'vicarious liability,' which arises when the individual 'had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" *J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, No. 13-CV-04299 FB VMS, 2014 WL 4467774, at *6 (E.D.N.Y. Sept. 9, 2014) (citations omitted). As noted above, the complaint alleges that Defendant Freeman was an owner and manager of the establishment, "had a right and ability to supervise the activities of the [e]stablishment," and "had an obvious and direct financial interest in the activities of the [e]stablishment." [ECF No. 1 ¶ 3.] These allegations, taken as true, are sufficient to establish Freeman's liability. *See 1400 Forest Ave Rest. Corp.*, 2014 WL 4467774, at *6.

[2] Plaintiff's complaint asserts that Defendants also violated 47 U.S.C. § 553, which pertains to the interception or receipt of cable communications traveling over cable wire "without mentioning radio communications." *J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352–53 (5th Cir. 2014). In its motion for default judgment, Plaintiff states that it only "moves for judgment under 47 U.S.C. § 605" because "[t]he transmission of the Event originated via satellite." [ECF No. 12 ¶ 7.]

6

**II. Damages**

When judgment is granted in favor of a plaintiff under § 605(a), § 605(e)(3)(A)–(C) guides the determination of damages. *J&J Sports Prods., Inc. v. JD Alexander Investments, LLC*, No. 7:17-cv-64, 2018 WL 2323291, at *3 (S.D. Tex. Jan. 4, 2018) (Alvarez, J.). Section 605(e)(3)(C) allows a prevailing plaintiff to elect either actual damages or statutory damages. *Id.* Here, Plaintiff seeks $60,000.00 in statutory damages, *viz.*: $10,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $50,000.00 in additional damages under 47 U.S.C. § 605(e)(3)(C)(ii). [ECF No. 12, page 10.]

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *DIRECTV, Inc. v. Hamilton*, 215 F.R.D. 460, 462 (S.D.N.Y. 2003) (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). "In determining damages not susceptible to simple mathematical calculation, a court has the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing." *Id.*; *see also Dierschke*, 975 F.2d at 185 ("[I]n a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages." (quotation marks and citation omitted)). "[T]he moving party is entitled to all reasonable inferences from the evidence it offers." *DIRECTV*, 215 F.R.D. at 462.

In support of its request for damages, Plaintiff submitted a brief [ECF No. 12], affidavits, and other documentation [ECF No. 12-1]. Of particular relevance to the determination of damages are the sworn affidavits of Curtis Giese and Kwasi English, who attest to being present at Plaintiff's establishment during the Event. [ECF No. 12-1, pages 21–22 and 27–28.]

Giese's affidavit states that he entered Defendants' establishment on May 2, 2015 at 10:53 p.m. There was no cover charge. Giese estimates that the establishment had a capacity of "approximately 60 people" but was "overcrowded beyond [that] capacity," such that he was "unable to order a beer or get a good look at the bartender in the darkness." Giese counted the number of patrons three times, resulting in head counts of 81, 82, and 84 individuals. Giese observed three televisions in the establishment: one 30-to-36-inch television near the entrance and two 50-to-60-inch flat screen televisions behind the bar. While inside the establishment, Giese witnessed the Event on all three televisions. Giese saw Pacquiao enter the arena, followed by Mayweather. Giese left the establishment at approximately 10:59 p.m. [ECF No. 12-1, pages 21–22.]

English's affidavit states that he entered Defendants' establishment at 9:21 p.m. and left five minutes later, at 9:26 p.m. There was no cover charge. English saw three television sets inside. Although he observed Round 2 of the fight between Santa Cruz and Cayetano, he does not state whether all three televisions displayed

that particular bout. The three head counts English took yielded 51, 51, and 55 patrons present. He estimates that the establishment had a capacity of 65 people. [ECF No. 12-1, pages 27–28.]

### A. Statutory Baseline Damages

Section 605(e)(3)(C)(i)(II) provides that "the party aggrieved may recover an award of statutory damages for each violation of [§ 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Courts have developed two principal methods for determining statutory damages under this provision. "One approach is to base the award of damages on the number of patrons in the establishment at the time of the violation." *Entertainment by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (Crone, J.). "Another method is to award a flat sum for damages." *Id.* "The first of these methods—the per-patron method—seeks to estimate the overall profits derived from the violation." *J&J Sports Prods., Inc. v. JD Alexander Investments, LLC*, No. 7:17-CV-64, 2018 WL 2323291, at *3 (S.D. Tex. Jan. 4, 2018) (Alvarez, J.). "The second method is reserved for situations where full compensation, deterrence, and particularly-willful conduct warrant a lump sum." *Id.*

9

In this case, the Court will employ the second (lump-sum) method in determining the statutory baseline for purposes of § 605(e)(3)(C)(i)(II).[3] According to documentary evidence Plaintiff has submitted, the commercial sublicense fee for the Event was $3,000.00 for a commercial establishment with a fire code occupancy of 100 or fewer persons. [ECF No. 12-1, pages 7, 37.] Simply awarding Plaintiff the $3,000.00 fee, however, would not sufficiently serve the Act's goal of deterrence. *See Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (noting that "one of Congress's principal objectives was to discourage theft of cable services"); *JD Alexander Investments*, 2018 WL 2323291, at *3 ("The baseline statutory penalty should be more than the licensing fee the defendant evaded, in order to *deter* such conduct."). With that purpose in mind, the Court concludes that the statutory baseline amount of damages in this case should be double the licensing fee, or $6,000.00. This sum substantially exceeds the amount that Defendants should have paid Plaintiff before displaying the Event at their establishment. *Compare id.* at *4 (adopting a $2,000 statutory baseline where defendants evaded a $1,600 license fee). Plaintiff requests the $10,000.00 maximum statutory baseline, but that amount is excessive and inappropriate here because there is no indication that Plaintiff

---

[3] Not only does Plaintiff propose the lump-sum method, but due to the lack of discovery resulting from Defendants' default, there is insufficient evidence before the Court to adequately estimate the overall profits Defendants derived from their violation.

"suffered substantial harm" or that Defendants "profited *greatly* as a result of the unlawful conduct." *Id.* at *3 (emphasis added).

### B. Additional Statutory Damages

Plaintiff is also entitled to additional statutory damages because Defendants' violation was willful. Section 605(e)(3)(C)(ii) provides that "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of [§ 605(a)]." 47 U.S.C. § 605(e)(3)(C)(ii).

The Act does not define "willfully," but "courts generally inquire whether a defendant's conduct entailed a 'disregard for the governing statute and an indifference for its requirements.'" *JD Alexander Investments*, 2018 WL 2323291, at *3 (quoting *J&J Sports Prods., Inc. v. Patino*, No. EP-16-CV-00412-DCG, 2017 WL 2297029, at *4 (W.D. Tex. May 24, 2017)). "Federal courts in Texas tend to infer such indifference for § 605(a)'s requirements when 'the defendant exhibited the telecast at a commercial establishment without proper authorization.'" *Id.* (quoting *Patino*, 2017 WL 2297029, at *4). "[C]ourts also tend to infer indifference because of the sheer unlikelihood that a defendant could accidentally intercept or receive a scrambled cable or satellite signal." *Id.* (internal quotation marks and

11

citation omitted). By defaulting in this matter, Defendants have admitted Plaintiff's allegation that they violated the Act willfully and with the purpose of obtaining a commercial advantage and private financial gain. The well-pleaded factual allegations in the complaint, and the reasonable inferences drawn therefrom, amply support that conclusion: the signal transmitting the Event did not spontaneously descramble itself, and "any reasonable bar owner could expect his business to do better by airing high-profile fights." *Id.* at *4.

Courts often apply a "multiplier" to the statutory baseline amount in order to determine the appropriate amount of additional damages to award for a willful violation of the Act. Although some courts have used higher or lower multipliers in certain cases,[4] a multiplier of two or three is most common. *J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, No. 13-CV-04299 FB VMS, 2014 WL 4467774, at *10 (E.D.N.Y. Sept. 9, 2014) (collecting cases where a multiplier of two has been used); *Traffic Sports USA v. La Camisa Negra Rest. & Bar Corp.*, No. 11-CV-1475 ARR, 2012 WL 3064129, at *5 (E.D.N.Y. May 23, 2012) (collecting cases where a multiplier of two or three has been used), *adopted*, No. II-CV-1475 ARR RLM, 2012

---

[4] *Compare JD Alexander Investments*, 2018 WL 2323291, at *4 (enhancing $2,000.00 baseline by $1,000.00—for an effective multiplier of 0.5—because the violation was willful), *and Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111–12 (E.D.N.Y. 1997) (awarding $5000 on top of a $3750 baseline—for an effective multiplier of 1.3—due to willfulness), *with J & J Sports Prods., Inc. v. Rivera*, No. 4:13-cv-902, 2014 WL 3533472, at *3 (S.D. Tex. July 14, 2014) (Harmon, J.) ("the case law reviewed by this Court suggests that a multiplier of three to eight times the amount of statutory damages is appropriate.").

WL 3065523 (E.D.N.Y. July 27, 2012). "In determining an appropriate amount of enhanced damages in cases involving cable and satellite piracy by taverns and restaurants, courts consider factors 'such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks.'" *Id.* at *5 (quoting *Kingvision Pay–Per–View Ltd. v. Rodriguez*, No. 02 Civ. 7972(SHS), 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)).

Such considerations are largely absent here. Defendants did not charge a cover, and there is no evidence that Defendants repeatedly violated § 605, advertised their display of the Event, or charged a premium for food or drink. Nor is Defendants' establishment an upscale or particularly sizeable venue. *See Joe Hand Promotions, Inc. v. Martinez*, No. 07 CV 6907(GBD)(MHD), 2008 WL 4619855, at *6 (S.D.N.Y. Oct. 17, 2008).

On the other hand, the fact that the establishment's capacity was exceeded during the Event's main fight suggests that Defendants' unlawful actions succeeded in attracting a high volume of business, which also indicates that Defendants did some form of pre-fight advertising to draw the crowd. That, combined with the interest in deterring this and other violations of the Act, favors an award of at least

13

some additional damages. Taking these factors together, a multiplier of two—for a total of $12,000 in additional statutory damages—is appropriate. *See Traffic Sports USA*, 2012 WL 3064129, at *6.

*\*\**

For these reasons, the Court RECOMMENDS that Plaintiff be awarded a total of $18,000.00 in damages.

## III. Attorney's Fees

The Act provides for an award of attorney's fees for violations of § 605(a). 47 U.S.C. § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). Plaintiff requests an award of attorney's fees equivalent to a one-third contingency fee. Alternatively, Plaintiff requests $1,000.00 in attorney's fees based on an hourly rate of $250.00 applied to four hours of work spent on this litigation through preparation of the motion for default judgment. Plaintiff also seeks contingent attorney's fees based on any post-trial and appellate services that may be rendered. [ECF No. 12, page 10; ECF No. 12-1, pages 39–46.]

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The affidavit of attorney David M. Diaz, submitted by Plaintiff in support of its request

for attorney's fees [ECF No. 12-1, pages 39–46], states that four hours of work were spent on this case through preparation of the motion for default judgment. Diaz further opines that a $250.00 per hour rate is reasonable in this case, for a total fee amount of $1,000.00. The Court finds this sum, and the amount of time and hourly fee upon which it is based, to be reasonable.

Plaintiff's request for a one-third contingency fee, which would result in an attorney's fee award of $6,000.00 in this case, is not reasonable. Particularly since this case did not present any difficult legal or factual issues, an award equivalent to six times the lodestar amount of $1,000.00 would be excessive. *J&J Sports Prods., Inc. v. Grayer*, No. SA-18-CV-00377-DAE, 2018 WL 6061445, at *6–7 (W.D. Tex. Nov. 19, 2018) ("As the undersigned recommends a total statutory and additional damages award of $18,000, a one-third contingent fee would amount to $6,000, or six times the 'lodestar' amount and a rate of $1,500 per hour. The undersigned believes that this would be an unreasonable fee.").

Plaintiff also requests an award of the following conditional attorney's fees: $10,000.00 in the event Defendants file a motion to vacate or various other post-judgment, pre-appeal motions that do not result in a reversal of the judgment; $25,000.00 in the event Defendants file an appeal to the Fifth Circuit that does not result in reversal; $5,000.00 in the event Defendants file a motion for rehearing or reconsideration in the Fifth Circuit that does not result in reversal; $25,000.00 for

15

making and/or responding to a petition for certiorari to the U.S. Supreme Court that does not result in reversal; $75,000.00 for an appeal to the U.S. Supreme Court that does not result in reversal; and $2,500.00 for each time Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment, or other post-judgment writ. [ECF No. 12-1, pages 45–46.]

An award of attorney's fees may include conditional fees for an appeal, but evidence showing the reasonableness of the fees requested is required. *Amlin Corp. Member, Ltd. v. Logistics Grp. Int'l, Inc.*, No. 4:09-cv-2695, 2011 WL 3271335, at *10 (S.D. Tex. July 28, 2011) (Rosenthal, J.); *Bass Drilling, Inc. v. Eaves*, No. 9:09-CV-187-TH, 2010 WL 11530857, at *5 (E.D. Tex. Mar. 12, 2010) (denying request for conditional attorney's fees as "speculative"). Here, Diaz's affidavit states that the conditional fees requested are reasonable based on his "knowledge, skill, experience, training, and education." [ECF No. 12-1, page 45.] However, the affidavit does not specify a number of hours to be worked, the tasks to be performed, who would perform them, or otherwise provide a specific basis for the amounts requested. The Court therefore recommends that the request for conditional attorney's fees be denied without prejudice to Plaintiff requesting additional fees should any of the listed contingencies arise. *See Amlin Corp.*, 2011 WL 3271335, at *10.

## IV. Conclusion

For the reasons given above, the Court RECOMMENDS that Plaintiff's Motion for Final Default Judgment [ECF No. 12] be GRANTED and that Plaintiff be awarded $18,000.00 in damages and $1,000.00 in attorney's fees.

**The parties have fourteen days from service of this Report and Recommendation to file any written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed at Houston, Texas, on February 11, 2019.

*Dena Palermo*

**Dena Hanovice Palermo**
**United States Magistrate Judge**